# TAX COURT OF NEW JERSEY

JOAN BEDRIN MURRAY
JUDGE



Essex County Dr. Martin L. King Jr. Justice Bldg.
495 Martin Luther King Blvd.- 4th Floor
Newark, New Jersey 07102-0690
609 815-2922, Ext. 54660

NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS

January 27, 2023

Via Email and Regular Mail
Donna Porcaro
5 Porcaro Drive
Little Ferry, New Jersey 07643

Via eCourts
Lindsey R. Curewitz, Deputy Attorney General
Division of Law
R.J. Hughes Justice Complex
25 Market Street
Trenton, New Jersey 08625

> Re:  Donna Porcaro v. Director, Division of Taxation
>       Docket No. 012296-2020

Dear Ms. Porcaro and Deputy Attorney General Curewitz:

This letter constitutes the court's opinion with regard to defendant, Director, Division of Taxation's motion for summary judgment dismissing plaintiff's complaint with prejudice for lack of subject matter jurisdiction under R. 4:6-2(a). In short, defendant contends plaintiff untimely protested a denial of her claim for a reduction in taxable wages reported on her 2016 New Jersey Gross Income Tax return. Plaintiff, by way of opposition, asserts she did not receive the refund denial notice, nor is there proof of service of the notice. She submits, instead, that the ninety-day period within which a written protest may be filed did not begin to run until more than two years









later, when she learned of the denial of her claim during a telephone call with defendant. For the reasons set forth more fully below, defendant's motion for summary judgment is denied.

I.     **Findings of Fact and Procedural Posture**

On December 14, 2015, plaintiff, Donna Porcaro (Porcaro), was involved in a shooting incident while on duty as a police officer in the Borough of Rochelle Park (Borough). She was placed on administrative leave for a period of time, then remained out of work due to her injury until her retirement on or about November 2016. The gravamen of plaintiff's complaint is that wages paid to her by the Borough in tax year 2016, while she was injured and not working, should not be subject to tax. She seeks a refund of approximately $10,000.

In support of its motion to dismiss plaintiff's complaint for untimeliness, defendant relies on the certification of Thomas Hepp (Hepp), a supervising auditor in the Division of Taxation's Conference and Appeals Branch. Therein, Hepp states he is assigned to assist defendant with the defense of its October 21, 2020 determination of untimeliness of plaintiff's protest, and that he is in possession of and fully familiar with defendant's pertinent files and records in this litigation. Specifically, Hepp certifies that a series of written communications took place between plaintiff and defendant regarding her 2016 GIT return. Attached to the Hepp certification are copies of four notices he states were sent to plaintiff. Each letter indicates plaintiff's name and correct mailing address in the top lefthand corner. The record does not contain plaintiff's responses to any of the notices, although there is no dispute she received and responded to the first three letters.

Plaintiff received defendant's first letter, dated April 3, 2017, after filing her 2016 GIT return in early 2017. The letter acknowledged receipt of plaintiff's tax return, and requested copies of her W-2 and/or 1099 statement(s) for tax year 2016 in order to "correct [her] account." Plaintiff

was directed to submit the requested documents within thirty days, which she did. Defendant's April 21, 2017 notice followed, advising plaintiff that her receipt of full pay during her time of injury or sickness was deemed wage continuation rather than wage replacement, and as such, was treated as taxable income. In addition, the letter informed plaintiff that if her employer was reimbursed for her wages through the workers' compensation program or other plan, she might be able to reduce her taxable income accordingly. Plaintiff was directed to submit any documentation in that regard within thirty days.

Plaintiff did supply proof of reimbursement, evidenced by defendant's third letter dated December 13, 2017, notifying her that her taxable wages were adjusted and an additional refund of $1,065.64 issued on her behalf. This refund followed an initial refund of $6,005.36, issued on April 18, 2017 in connection with defendant's request for documentation on April 3, 2017. The December 13, 2017 letter noted that proof of further reimbursement to the Borough, if any, should be submitted within thirty days. Plaintiff responded on even date.

It is the mailing and receipt of the fourth and final letter in the 2017 exchange between the parties that constitutes the singular dispute of fact. To wit, Hepp states that a refund denial notice was mailed to plaintiff on December 21, 2017, advising her that no further reduction of her 2016 taxable wages was permitted. The refund denial notice also states that "[t]his above determination is final unless you submit a written protest and request for a hearing (if a hearing is desired) within 90 days from the date of this notice." Thus, plaintiff's written protest would be due on or about March 21, 2018.

No such protest was submitted by plaintiff, who contends she did not receive the denial notice. Further, plaintiff notes she would have timely responded to the notice in the same manner

3

she responded to the three prior notices. No other written communications were exchanged between the parties for more than a two-year period. Instead, plaintiff asserts she engaged in a series of telephone calls with defendant in which she was given varied answers as to the time within which she had to pursue her claim. Further, plaintiff claims she repeatedly asked defendant for copies of all documents in her file pertaining to her refund request, and that she finally received copies of all four letters sometime between March and May of 2020. Plaintiff contends this was the first time she saw the December 21, 2017 refund denial notice.

On June 2, 2020, which she asserts is within ninety days of her receipt of the December 21, 2017 refund denial notice, plaintiff faxed a cover letter with sixteen pages of attachments to defendant in support of her claim for an additional refund. Defendant responded on October 21, 2020, informing plaintiff that her June 2, 2020 protest was filed more than twenty-six months out of time. In addition, the letter contained instructions regarding plaintiff's right to appeal the determination in the Tax Court. Plaintiff filed the complaint at bar on November 5, 2020.

Thereafter, the parties exchanged discovery. Plaintiff provided defendant with copies of the documents she obtained from the Division of Taxation, including the four letters referred to in the Hepp certification accompanying defendant's motion. In her opposition to defendant's summary judgment motion, plaintiff points out that the exhibits to the Hepp certification, namely the December 13, 2017 and December 21, 2017 letters, are copies of those she supplied in discovery. In short, the photocopy of the December 21, 2017 letter at issue, attached in triplicate to Hepp's certification as Exhibit D, shows plaintiff's finger holding page 1 of the letter, which is dated. Plaintiff argues this constitutes evidence that defendant did not have in its possession the

4

letter purportedly mailed to her on December 21, 2017, suggesting it was not mailed to her on that date. Conversely, defendant maintains that plaintiff's identification of her finger on the letter is proof that she timely received the letter.

## II.     Conclusions of Law

Applications for summary judgment are governed by R. 4:46-2, which provides in pertinent part  that:

> The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
>
> [R. 4:46-2.]

In Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520 (1995), the Court reframed the standard for summary review by holding that:

> [T]he determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Id. at 523.]

In the motion at bar, defendant seeks summary judgment dismissing plaintiff's complaint for lack of subject matter jurisdiction under R. 4:6-2(a), which dispositive defense may be asserted at any juncture and is non-waivable by the parties. Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:6-2 (GANN) (2023) (citing Macysyn v. Hensler, 329 N.J. Super. 476, 481 (App. Div, 2000)). See also R. 4:6-7, providing that "[w]henever it appears  . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the matter . . . ."

5

Here, defendant's claim that subject matter jurisdiction is lacking is premised on plaintiff's alleged untimely protest of the December 21, 2017 refund denial letter. Plaintiff counters she did not receive the notice until sometime in 2020, when it was mailed to her by defendant upon her request for copies of her file.

The legal standard governing service of notice by the Director, Division of Taxation is set forth in the State Uniform Tax Procedure Law, N.J.S.A. 54:48-1 to 54:54-6 (UPL). Therein, N.J.S.A. 54:50-6(a) provides in part: "Any notice required to be given by the director pursuant to the [UPL] may be served personally or by mailing the same to the person for whom it is intended, addressed to such person at the address given in the last report filed by that person . . . ." Also, [t]he mailing of such notice shall be presumptive evidence of the receipt of the same by the person to whom it was addressed." Ibid. A refund determination notice is included in the list of notice types contemplated by the statute. N.J.S.A. 54:50-6(d).

Turning to the timeliness issue, N.J.S.A. 54:49-18(a) provides that a taxpayer "aggrieved by any finding or assessment of the director . . . may, within 90 days after the giving of the notice of assessment or finding, file a protest . . . ." The ninety-day period for filing a protest runs from the time the plaintiff receives notice. Estate of Pelligra v. Dir., Div. of Taxation, 23 N.J. Tax 658, 663 (Tax 2008).

The statutory time periods in the New Jersey Court Rules are jurisdictional. McMahon v. City of Newark, 195 N.J. 526, 530, 544 (2008). As such, they are not subject to relaxation by the Tax Court. Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 8:4-1 (GANN) (2021).

In the instant matter, the issue is whether plaintiff's protest is untimely. While defendant relies on the presumption of receipt of the December 21, 2017 letter upon mailing, the court is not

persuaded that the photocopied exhibit showing plaintiff's finger renders that presumption irrebuttable for purposes of summary judgment. Instead, viewing the evidence in the light most favorable to plaintiff, the court concludes there is a genuine dispute of material fact. Further, determination of the dispute hinges largely on credibility determinations, which cannot properly be made in a summary judgment setting. Pressler & Verniero, Current N.J. Court Rules, cmt. 2.3.2 on R. 4:46-2 (GANN) (2021) (citing Parks v. Rogers, 176 N.J. 491, 502 (2003)).

In light of the foregoing, defendant's motion for summary judgment is denied. The matter will proceed to a plenary hearing on March 22, 2023 at 9:00 a.m. to determine the issues raised herein.

Very truly yours,

Hon. Joan Bedrin Murray, J.T.C.